UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH DRAZIC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-CV-2217 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Joseph Drazic seeks review of the decision by the Deputy Commissioner of Operations, Nancy Berryhill ("Defendant"), denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (hereinafter, "the Act").[1] The Court has reviewed the parties' briefs and the administrative record, including the hearing transcript and medical evidence. For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's applications.

### I. *Procedural History and Background*

On December 13, 2013 and June 9, 2014, Plaintiff filed applications for DIB and SSI, claiming that he became disabled on March 10, 2012 due to depression, left arm ulnar nerve palsy, cubital tunnel syndrome, carpal tunnel syndrome, and "chronic severe left hand & elbow pain & immobility." (Tr. 47-48, 122-131, 144-147) The Social Security Administration (SSA) denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law

---

[1] The Parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9).

1

judge (ALJ). (Tr. 47-51, 73-74). The SSA granted Plaintiff's request for review and conducted a hearing. (Tr. 18-35)

In a decision dated July 21, 2016, the ALJ determined that Plaintiff, then fifty-three years old, had not been under a disability, as defined in the Social Security Act, since March 10, 2012. (Tr. 21) The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work with the following limitations:

> [H]e is unable to climb ladders, ropes or scaffolds. He is unable to use his left (non-dominant) hand for fine manipulation. He is limited to occupations that involve only simple, routine and repetitive tasks. In a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting.

(Tr. 25)

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council and submitted additional medical evidence.[2] (Tr. 1-6) The Appeals Council found that the new medical evidence submitted by Plaintiff did "not show a reasonable probability that it would change the outcome of the decision," and it denied review. (Tr. 2) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

With respect to the medical records and other evidence of record, the Court adopts Plaintiff's recitation of facts set forth in her Statement of Material Facts [ECF No. 20], to the extent admitted by Defendant [ECF No. 25-1]. The Court also adopts the additional facts set

---

[2] The administrative record includes the evidence submitted to the SSA Appeals Council after the ALJ's decision. "In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council." Berhmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000) (citing Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999)). "In such a situation, '[a] court's role is to determine whether the ALJ's decision 'is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.'" Id. (quoting Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)).

forth in Defendant's Statement of Additional Uncontroverted Facts [ECF No. 25-2] and notes that Plaintiff did not refute them. Together, these statements provide a fair and accurate description of the relevant record before the Court. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. *Standards for Determining Disability Under the Act*

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

### III. Discussion

Plaintiff claims that substantial evidence does not support the ALJ's decision because the ALJ failed to properly evaluate Plaintiff's subjective complaints and medical and third-party opinion evidence when formulating Plaintiff's RFC. In addition, Plaintiff contends that the ALJ failed to resolve the alleged conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).[3] [ECF No. 19] In response, Defendant asserts that the ALJ properly considered the medical evidence, including Plaintiff's subjective allegations, and substantial evidence supported the RFC. [ECF No. 25]

#### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court

---

[3] For ease of analysis, the Court addresses Plaintiff's argument out of order.

must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

### B. RFC Assessment

Plaintiff claims the ALJ erred in assessing his physical RFC because he improperly: (1) discredited Plaintiff's subjective complaints and (2) considered the medical opinion evidence. RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1). See also Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (quotation omitted).

When determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective complaints with the evidence of record. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005). Some medical evidence must support the ALJ's RFC determination. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

1. Evaluation of symptoms

The Court first considers the consistency of Plaintiff's subjective complaints because the ALJ's evaluation of Plaintiff's symptoms was essential to the ALJ's determination of other

5

issues, including Plaintiff's RFC. [4] See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). Plaintiff contends the ALJ failed to "conduct a proper, explicit" analysis of his subjective statements about symptoms as required by SSR 96-7P and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). [ECF No. 19 at 6] Defendant counters that SSR 16-3p "does not require discussion of every factor" and the ALJ properly evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms. [ECF No. 25 at 5-6]

For purposes of Social Security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairments(s). SSR 16-3p, 2017 WL 5180304, at *2 (SSA. Oct. 2017). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. Id. at *8. See also 20 C.F.R. § 404.1529(c)(3) (explaining how the SSA evaluates symptoms, including pain).

When evaluating a claimant's subjective statements about symptoms, the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints," including a claimant's work history and observations by third parties and physicians regarding: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Polaski, 739 F.2d at 1322. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the

---

[4] The SSA issued a new ruling, effective March 28, 2016, that eliminates the use of the term "credibility" when evaluating a claimant's subjective statement of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (SSA Oct. 2017). The factors to be considered in evaluating a claimant's statements, however, remain the same. See id.; Schmidt v. Berryhill, No. 4:17-CV-2375-CDP, 2019 WL 339634, at *3 n.4 (E.D. Mo. Jan. 28, 2019). Because the ALJ's decision in this case was issued after March 28, 2016, SSR 16-3p applies to this matter.

ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also SSR 16-3p, at 2017 WL 5180304, at *11.

Here, the ALJ reviewed the objective medical evidence of record and determined that it did not support the severity of Plaintiff's alleged symptoms. (Tr. 27) Plaintiff underwent ulnar release surgery in June 2012 and carpal tunnel release surgery in October 2012. Although Plaintiff continued to complain of weakness in his left hand and numbness and tingling in his fourth and fifth fingers, and "less severe" symptoms in his right hand and arm, electrodiagnostic testing of the left and right median and ulnar nerves performed in January 2013 produced "normal" results.[5] (Tr. 423) Repeat testing of Plaintiff's left upper extremity in June 2013 was "stable and unchanged compared to previous [test] on 1/28/13." (Tr. 437) An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (quotation omitted).

The ALJ also noted Plaintiff's relatively conservative treatment history following the 2012 surgeries, which consisted of medication, exercises, and physical therapy. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (conservative treatment can undermine subjective complaints of disabling conditions). Plaintiff's primary care provider began treating Plaintiff's left arm and hand impairment in August 2013, and she prescribed meloxicam and gabapentin. From August 2013 through December 2015, Plaintiff "continued to visit [his primary care

---

[5] Plaintiff's neurologist, Dr. Peeples, summarized the test results as follows:
> Pertinent findings included normal right median and ulnar distal motor latencies, motor responses, voltages, and motor conduction velocities. Ulnar motor conduction was normal across the right elbow segment. Median and ulnar sensory conduction was normal orthodromic Lahey and antidromic across the right wrist and sensory response voltages were well-maintained. EMG revealed no acute or chronic denervation in right hand muscles tested.

(Tr. 420) Dr. Peeples concluded: "This study is normal and reveals no electrodiagnostic findings for a right median or ulnar neuropathy." (Tr. 423)

provider] every three months, with the same complaints, and [the primary care provider] continued the claimant's medication."

Relatedly, the ALJ observed that this treatment, including prescription medication and surgery, "has improved these conditions." (Tr. 27) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Renstrom, 680 F.3d at 1066 (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)). Nevertheless, the ALJ limited Plaintiff's RFC to light work and included the inability "to use his left (non-dominant) hand for fine manipulation." (Tr. 25)

Finally, although not addressed in the context of Plaintiff's subjective complaints, the ALJ discussed Plaintiff's activities of daily living, which suggested that his symptoms were less severe than alleged. For example, the ALJ noted that Plaintiff "reported working at a friend's bar helping with food preparation during the period at issue." (Tr. 24) Plaintiff also prepared meals and performed household chores, including cleaning. (Id.) An ALJ may discount a claimant's subjective complaints of disabling impairment if they are inconsistent with his activities of daily living. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013).

To the extent the ALJ did not specifically discuss each Polaski factor, the Court notes that an ALJ "need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make." Noerper v. Berryhill, No. 1:17-CV-157-NCC, 2018 WL 4562909, at *4 (E.D. Mo. Sept. 24, 2018) (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). Here, the ALJ pointed to Plaintiff's treatment notes, the results of objective testing, and Plaintiff's activities of daily living, all of which supported his finding that the record failed to support Plaintiff's allegations regarding the severity of his symptoms. The

Court therefore finds the ALJ properly considered the factors set forth in Polaski and SSR 16-3p and determined that the evidence in the record failed to support a greater limitation than found in the RFC.

    2. Medical opinion evidence

Plaintiff claims the ALJ did not properly weigh the opinions of: Dr. Emanuel, his treating physician; Dr. Tharenos, a consulting examiner; and Plaintiff's sister. [ECF No. 19] In response, Defendant asserts that the ALJ properly considered the evidence in the record. [ECF No. 25]

Plaintiff first contends the ALJ erred in dismissing Dr. Emanuel's opinion that Plaintiff was unable to work. A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Id. This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians. See 20 C.F.R. §§ 404.1527, 416.927; Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require

that the ALJ 'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Emanuel first treated Plaintiff for left arm and elbow pain in April 2012. (Tr. 265) Dr. Emanuel diagnosed Plaintiff with "ulnar nerve palsy – cubital tunnel syndrome – elbow," and recommended ulnar nerve release surgery, which he performed in June 2012. (Tr. 268) One month after surgery, Plaintiff informed Dr. Emanuel that he "ha[d] regained range of motion of the elbow" but continued to experience "numbness in the ulnar nerve distribution of his left hand[.]" (Tr. 276) He also complained of "numbness and tingling in the right upper extremity…despite reported negative nerve conduct EMG studies." (Id.) Dr. Emanuel recommended range of motion exercises and "no work at this time." (Tr. 277)

When Plaintiff returned to Dr. Emanuel's office in August 2012, Dr. Emanuel noted that Plaintiff had full range of motion and good stability of the elbow, "relatively good strength, weakness in wrist flexion and intrinsic muscle strength of fingers." (Tr. 178) However, Plaintiff continued to complain of "numbness and tingling, weakness of the intrinsic muscle groups of the hand." (Id.) Dr. Emanuel opined that Plaintiff "is unable to work at this time. He is unable to grip anything with his left hand." (Tr. 279)

When Plaintiff followed up with Dr. Emanuel in September 2012, he had full range of motion in his left elbow and "some improvement of the intrinsic muscle development in the left hand[.]" (Tr. 280) However, he complained of "numbness and tingling in the hand." (Tr. 280) Dr. Emanuel recommended carpal tunnel release, which he performed in October 2012. (Tr. 281, 289) In December 2012, Plaintiff "continue[d] to have numbness and tingling into digits 4

and 5" and "grip strength [was] diminished slightly." (Tr. 287) Dr. Emanuel instructed Plaintiff to continue his home exercise program and prescribed physical therapy. (Tr. 288)

The ALJ considered Dr. Emanuel's treatment notes and his statements instructing Plaintiff not to work. (Tr. 28) Although the ALJ did assign a specific weight to Dr. Emanuel's opinion, he appeared to give it little weight, noting: "Dr. Emanuel has not been specific in his instructions regarding how long he did not want the claimant to work." (Tr. 28) The ALJ further discredited Dr. Emanuel's opinion because "stating that the claimant is unable to work is an opinion reserved to the Commissioner." (Id.)

A review of Dr. Emanuel's records reveals that Dr. Emanuel only ordered Plaintiff off work before the Plaintiff's carpal tunnel release surgery. Following that surgery in September 2012, Dr. Emanuel observed improvement in Plaintiff's condition and recommended a home exercise program and physical therapy.

A January 2013 letter from Plaintiff's physical therapist to Dr. Emanuel, tends to support the ALJ's conclusion that Dr. Emanuel restricted Plaintiff's work for a limited time only. The physical therapist wrote: "hand strength testing [was] inconsistent, but possible [i]ntrinsic weakness in ulnar 2 left digits of hand. There is no obvious atrophy of L hand. Froment's sign is negative." (Tr. 320). The physical therapist noted inconsistent performance on objective evaluations, which suggested that Plaintiff's effort was "sub-maximal," and stated that Plaintiff had been "working at his friend's bar, helping with food preparation." (Tr. 320-21)

Second, Plaintiff argues that the ALJ erred in failing to weigh the medical opinion of the consulting examiner, Dr. Tharenos, and include in the RFC a limitation on gross manipulation. [ECF No. 19 at 4] Defendant counters that Dr. Tharenos's report was not a medical opinion

11

and, even if it were, "her findings were not entirely consistent with the record as a whole[.]" [ECF No. 25 at 8]

An ALJ must evaluate every medical opinion contained in the record.[6] 20 C.F.R. § 404.1527(c). When determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)).

Dr. Tharenos reviewed Plaintiff's medical records and performed a consultative examination in April 2014. (Tr. 363) Dr. Tharenos noted that Plaintiff's chief complaints were "left arm ulnar nerve palsy and cubital tunnel syndrome," and that he had "a new complaint of right hand numbness and tingling that he thinks is 'carpal tunnel like on my left.'" (Tr. 363-64) Dr. Tharenos performed a physical examination and observed that Plaintiff's "fine and dexterous finger control is intact on the right, but significantly decreased on the left." (Tr. 365) Dr. Tharenos also noted a tremor in the left hand, decreased range of motion of the left elbow, decreased grip strength on the left, "decreased left upper extremity strength from the elbow distally," and "decreased sensation to light touch and pinprick over the left ulnar nerve distribution." (Tr. 365-66)

Along with the physical examination, Dr. Tharenos completed a chart assessing Plaintiff's fine and gross manipulative movements. (Tr. 368) According to the chart, the grip strength of Plaintiff's dominant, right hand was a five on a five-point scale and he had no

---

[6] The SSA regulations provide that medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Because Dr. Tharenos assessed Plaintiff's ability to perform various functions with his hands, the Court considers her report a medical opinion.

difficulty performing any fine or gross manipulations with his right hand. (Id.) In contrast, the grip strength of his left hand was a two. (Id.) Dr. Tharenos observed that Plaintiff had "severe difficulty" buttoning/unbuttoning and tying shoelaces with his left hand. Plaintiff exhibited moderate difficulty using his left hand to open a door using a knob, squeeze a blood pressure cuff bulb, pick up a coin, pick up/hold a cup or a pen, and zip/unzip.

Plaintiff is correct that the ALJ failed to identify and explain the weight he assigned Dr. Tharenos's opinion. However, an ALJ's failure to specify the particular weight placed on a medical opinion does not constitute reversible error if did not affect the outcome of the case. Wilson v. Berryhill, No. 4:16-CV-1492-CAS, 2018 WL 4636174, at * 7 (E.D. Mo. Sept. 27, 2018) (citing McCadney v. Astrue, 519 F.3d 764, 767 (8th Cir. 2008)).

The ALJ discussed Dr. Tharenos's support in the summary of the treatment records, stating: "[Dr. Tharenos] noted a tremor in the claimant's left hand as well as decreased sensation, muscle atrophy, and significantly grip strength in the left upper extremity." (Tr. 26) The ALJ gave Dr. Tharenos's opinion at least some weight because hers was the only medical opinion that specifically addressed Plaintiff's gross and fine manipulative functions, and the ALJ incorporated some of Dr. Tharenos's limitations in the RFC. Consistent with Dr. Tharenos's evaluation of Plaintiff's manipulative movements, the ALJ determined that Plaintiff was "unable to use his left (non-dominant) hand for fine manipulation." (Tr. 25)

Plaintiff maintains that the ALJ erred in failing to include limitations on gross manipulation consistent with Dr. Tharenos's evaluation. [ECF No. 19 at 4] However, it is clear that the ALJ gave little weight to Dr. Tharenos's opinion regarding gross manipulation because it conflicted with the contemporaneous medical records as well as other evidence in the record as a whole. See e.g., Seavey v. Berryhill, No. 2:16-CV-63-SPM, 2018 WL 1317172, at *6 (E.D. Mo.

March 14, 2018). For example, the January 2013 report by Plaintiff's physical therapist revealed that he successfully performed "50 lb lat pull downs," "free lift[ed] 35 lb with normal symmetry," "repeatedly grip[ped] 35 lb on spring-loaded exercise device," and "work[ed] at his friend's bar, helping with food preparation." (Tr. 321-22) Consequently, substantial evidence did not support a gross manipulation limitation on Plaintiff's left hand.

Third, Plaintiff argues the ALJ erred in discrediting Plaintiff's sister's third-party report. [ECF No. 19 at 3] Defendant counters that the ALJ properly evaluated the third-party statements of record. [ECF No. 25 at 8]

"In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual. . . ." SSR 96–7P, 1996 WL 374186 (SSA July 1996). Importantly, the ALJ has more discretion to discount non-medical opinion evidence than medical opinion evidence and may consider any inconsistencies between the non-medical opinion and other evidence in the record. Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005). Questions of credibility are primarily for the ALJ to decide, and a court will normally defer to the ALJ's determination so long as the ALJ gives good reasons. Gregg, 354 F.3d at 714.

Here, Plaintiff's sister completed a questionnaire about Plaintiff's impairments and functional abilities in February 2014. (Tr. 195-202) In the report, Plaintiff's sister wrote that, on a typical day, Plaintiff read the daily paper, checked on his mother, ran errands, cooked, "ke[pt] house," and watched television. (Tr. 195) Plaintiff was able to drive, walk, and "go out alone." The only limitations she noted were an inability do yard work and "things that take 2 hands," like buttons and shoelaces. (Tr. 196-97)

14

In his decision, the ALJ found that Plaintiff's sister's report "is generally supportive of the claimant's allegations." (Tr. 28) However, the ALJ declined to assign the report significant weight because it was "not from a disinterested third party witness whose statements would not tend to be tainted by affection for the claimant and a natural tendency to agree with the claimant's alleged symptoms and limitations." (Id.) The ALJ also noted that the report was "not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Id.)

The ALJ discounted Plaintiff's sister's assertions regarding Plaintiff's limitations for the same reason he discredited Plaintiff's statements regarding the severity of his subjective impairments – they were not supported by objective medical evidence. An ALJ may discount corroborating testimony from third parties on the same basis used to discredit a claimant's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). The Court finds substantial evidence in the record to support the ALJ's decision to assign the third-party report little weight.

### C. *Vocational Expert Testimony*

Plaintiff contends the ALJ erred in failing to identify and correct conflicts between the vocational expert's testimony and the DOT. [ECF No. 19 at 7] More specifically, he argues that the three jobs identified by the vocational expert require either frequent or occasional fingering, which conflicts with the ALJ's RFC limiting Plaintiff to no use of his "left (non-dominant) hand for fine manipulation." [ECF No. 19 at 7-8] In response, Defendant asserts that there was no conflict and, even if there was a conflict, Plaintiff "does not argue a conflict with respect to the job of housekeeping cleaner, which requires only occasional fingering." [ECF No. 25 at 11]

At step five of the sequential analysis, the burden shifts to Defendant to establish that a claimant maintains the RFC to perform a significant number of jobs in the national economy. 20

15

C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). See also Singh, 222 F.3d at 451. Defendant may satisfy her burden by eliciting testimony by a vocational expert based upon hypothetical questions that "set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." Jones v. Astrue, 619 F.3d 963, 972 (8th Cir. 2010) (quoting Hillier v. Soc. Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007)).

A vocational expert's testimony should generally be consistent with the DOT. SSR 00-4P, 2000 WL 1898704 (SSA Dec. 2000). "When conflicts arise, an ALJ must resolve conflicts between the testimony and the DOT 'by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.'" Stamper v. Colvin, 174 F. Supp. 3d 1058, 1064 (E.D. Mo. 2016) (quoting SSR 00-4P). See also Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014). However, "[t]o show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided different if the error had no occurred." Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012).

The ALJ provided the vocational expert with interrogatories asking whether a hypothetical individual with Plaintiff's RFC, including the ability to perform light work with no use of the left hand for fine manipulation, could perform "any unskilled occupations with jobs that exist in the local and national economies." (Tr. 232-33) In response, the vocational expert opined that a hypothetical individual with Plaintiff's RFC could perform the jobs of housekeeping cleaner, fast food worker, and cashier. (Tr. 243) The vocational expert further stated that there was no conflict between the occupational evidence he provided and the occupational information contained in the DOT and/or the Selected Characteristics of

Occupations (SCO). (Tr. 233) In response to an interrogatory adding to the hypothetical individual a limitation to "only occasional use of his left (non-dominant) hand for gross manipulation," the vocational expert stated that such individual could still perform the work of fast food worker. (Tr. 234, 244) The vocational expert also suggested that sedentary jobs would be available. (Tr. 244)

In his decision, the ALJ found, based on the vocational expert's answers, that Plaintiff would be able to perform the requirements of the following occupations: housekeeping cleaner, fast foods worker, and cashier. (Tr. 30) The ALJ therefore concluded at step five of the sequential analysis that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.)

The jobs of fast food worker (DICOT 311.472-010) and cashier II (DICOT 211.462-010) require frequent fingering, and the job of housekeeping cleaner (DICOT 323.687-014) requires occasional fingering. To the extent that Plaintiff's limited use of his non-dominant hand conflicts with the DOT's description of work as a fast food worker or cashier, it does not conflict with the occasional fingering required of a housekeeping cleaner. As long as a claimant can perform one of the jobs identified by the vocational expert, an ALJ's failure to remedy an alleged conflict with other jobs is harmless. See Bates v. Berryhill, No. 4:16-CV-1413-JAR, 2017 WL 4358723, at *5 (E.D Mo. Sept. 29, 2017); Latragna v. Colvin, No. 4:14-CV-496-JMB, 2015 WL 4771630, at *18-19 (E.D. Mo. Aug. 12, 2015). Accordingly, any error was harmless and ALJ's reliance on the vocational expert's testimony that Plaintiff could work as a housekeeping cleaner was not in error. See Bates, 2017 WL 4358723, at *5.

*IV.    Conclusion*

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision. Accordingly,

**IT IS HEREBY ORDERED** that, the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of March, 2019